UNITED STATES, Appellee,

v.

Staff Sergeant, James H. TOMBERLIN, SSN 256–88–3555, United States Army, Appellant.

CM 436588.

U. S. Army Court of Military Review.

13 July 1978.

11. *United States v. Sellers,* 12 U.S.C.M.A. 262, 30 C.M.R. 262 (1961).

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, and Captain Steven E. Napper, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Captain Richard A. Kirby, JAGC, and Captain Robert D. Newberry, JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and THORNOCK, Appellate Military Judges.

## OPINION OF THE COURT

THORNOCK, Judge:

The accused, pursuant to his plea, was found guilty of two specifications of assault with a dangerous weapon in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928; two specifications of lifting up a weapon against a supe-rior officer in violation of Article 90, UCMJ, 10 U.S.C. § 890; four specifications of unlawful confinement in violation of Article 97, UCMJ, 10 U.S.C. § 897; and six specifications of threatening to kill and one specification of wrongful discharge of a firearm all in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced by a court of both officer and enlisted members to a bad-conduct discharge, total forfeitures and reduction to the grade of Private E–1. The convening authority disapproved the findings of guilty of the unlawful confinement charge and specifications, and approved only so much of the sentence as provides for a bad-conduct discharge, forfeiture of $250.00 pay per month for six months, and reduction to Private E–1.

The appellant, while very intoxicated, commandeered a loaded M–16 rifle and 110 rounds of ammunition at a small U.S. Army nuclear security detachment on a German Army post. He then committed the offenses alleged by holding four members of his unit, including its commander, as hostages and at bay for several hours. During the course of this action, he discharged the weapon and committed the other delicts and threats of which he was found guilty.

The appellant assigns four errors before this Court, viz: the appellant was denied his right to counsel; the appellant's plea to the wrongful discharge of a weapon was improvident in that there was no showing that the firing of the weapon endangered anyone; the appellant was not served a copy of the record of trial as soon as it was authenticated; and that it was error for the military judge not to advise the appellant of his right to defend himself.

### I

During the pretrial stages of the case the appellant was represented by detailed counsel, Captain Tudor, and Captain Gasperini as individual counsel. Both counsel participated in the Article 32(b), UCMJ, 10 U.S.C. § 832(b), investigation. At some point after the Article 32 investigation, but prior to the first Article 39(a), UCMJ, 10 U.S.C. § 839(a)

pretrial hearing, the appellant retained a civilian attorney. At that Article 39(a) session the following colloquy took place:

MJ: Sergeant Tomberlin, do you understand that you have a right to be represented by a civilian lawyer, so long as you provide such a lawyer at no expense to the government?

ACCUSED: Yes, sir.

MJ: Do you understand that, in the alternative, you have the right to be represented by a military lawyer of your own selection free of charge, so long as a military lawyer of your choice is reasonably available?

ACCUSED: Yes, sir.

MJ: And, do you understand that if you are represented by a lawyer of your own choice, either civilian or military, you would still be entitled to have your detailed defense counsel, Captain Tudor, act as associate counsel, if you so desired?

ACCUSED: Yes, sir.

MJ: Understanding those rights, by whom do you want to be defended?

ACCUSED: I want Mr. Cohen to be my defense counsel, and I would like Captain Tudor right now as my military defense attorney, yes, sir, and Captain Gasperini as my associate defense attorney.

MJ: Sergeant Tomberlin, you have a right to have a civilian lawyer and your detailed counsel represent you or a military lawyer of your own choice and your detailed counsel represent you. Have you requested that Captain Gasperini be made available to act as your defense counsel?

ACCUSED: Yes, sir.

MJ: Captain Gasperini, have you been determined to be available to act as defense counsel in this case?

IDC (GASPERINI): Yes, sir, I have.

MJ: Rather than going on with an explanation of Sergeant Tomberlin's rights and choices in the matter, I will just ask whether or not trial counsel can tell me whether or not Captain Gasperini will remain available even if Sergeant Tomberlin is represented by civilian counsel. Do you know one way or the other?

TC: I don't know one way or the other. I assume so.

MJ: At this point I am not going to swear Captain Gasperini in. Sergeant Tomberlin, it may be that the convening authority will allow Captain Gasperini to act as your individual counsel, even if you would be represented by Mr. Cohen, but you do not have a right to be represented by both Mr. Cohen and Captain Gasperini. Do you understand that?

ACCUSED: Yes, sir.

MJ: If you are required to make a choice—I don't know that this will happen, but if it does happen that you are required to make a choice, do you want to be represented by Mr. Cohen or Captain Gasperini?

ACCUSED: Mr. Cohen, sir.

MJ: And, am I correct in understanding that, in any event, you want Captain Tudor, your detailed defense counsel, to act as associate counsel?

ACCUSED: Yes, sir.

At the next Article 39(a) session, Captain Gasperini was not present and the following transpired:

MJ: I note that Captain Gasperini is not here. Does the Convening Authority decline to make him available?

TC: The Convening Authority has excused Captain Gasperini from the case.

IC: In response to your question, would be an affirmative response. The Convening Authority has declined to make Captain Gasperini available for further proceedings in this case.

MJ: All right. Sergeant Tomberlin, I just want to ask you again to make sure, as between Captain Gasperini and Mr. Cohen, am I correct in assuming that you want to be represented by Mr. Cohen?

ACC: Yes, sir.

■ As seen above, on two occasions the appellant elected Mr. Cohen as his counsel

in preference to Captain Gasperini. The record is silent as to any further request for Captain Gasperini or any objection to his nonavailability. Although it is true that "the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience," *United States v. Murray*, 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970), in the instant matter, such was not the case. The appellant raises an objection to Captain Gasperini's nonavailability for the first time in this forum. The time to litigate an adverse decision to a request for counsel is at the time when that counsel can do the most good, not well after the trial. *United States v. Cutting*, 14 U.S.C.M.A. 347, 351, 34 C.M.R. 127, 131 (1964).

■ The appellant asserts that he was deprived of effective assistance of counsel at the instigation of the military judge. Or, in other words, if the judge had not asked about Captain Gasperini's availability, the convening authority would not have had the matter called to his attention and Captain Gasperini would have continued to serve. To the contrary, we do not impute such a motive to the military judge. In our view he was faced with an unusual situation: an accused asking for *three* counsel. The military judge, by his record-inquiry of the appellant, amply demonstrated that he understood the mandate of *United States v. Jordan*, 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973), and *United States v. Jorge*, 1 M.J. 184 (C.M.A.1975), that, "in addition to the right to be represented by a detailed military counsel, [an accused] is also entitled to representation by a retained civilian counsel *or* individually selected military counsel but not both." *United States v. Jorge*, 1 M.J. at 185 (emphasis in the original). Moreover, "[t]here is no constitutional provision for, and no reason in logic or sound practice to justify, appointment of a third lawyer for

the trial merely because the accused desires one." *United States v. Jordan*, 22 U.S.C.M.A. at 167, 46 C.M.R. at 167. This is true even though, as in this case, an attorney-client relationship had been established. In *Jordan*, the court observed that, "[e]stablishment of an attorney-client relationship is not immutable or irrevocable. An accused can always discharge his lawyer." *Id.* at 166.

In *United States v. Murray, supra,* the Court noted that a requested counsel's absence was without the accused's consent. This was not the case herein. Twice on the record (applicable portions quoted, *supra*) the appellant made an informed election and indicated he would proceed with the *civilian counsel and* his detailed counsel rather than the *individual counsel and* the detailed counsel. Under these facts and the law, we find no error and hold accordingly.

## II

■ The appellant next alleges that his plea of guilty to the wrongful discharge of a weapon was improvident in that there was no showing that the firing of the weapon endangered anyone. We do not agree. The appellant indicated that because he was intoxicated he could not remember all the details of his activities but that he did remember that he had willfully fired the weapon and he was also aware of where he was. The stipulated facts further show that although there was no one in the orderly room when he fired, the appellant later told a noncommissioned officer to check upstairs to make sure no one was injured by the shots in the ceiling. This amply demonstrates the appellant's awareness of the danger to human life and his reply to the judge's queries confirms that knowledge.[1] We find this assigned error to

1. The record reflects as follows:

   MJ: Do you recall discharging a firearm on the 15th of May in the orderly room of the 7th Army Artillery Detachment?

   ACC: Sir, I remember the weapon being fired.

   MJ: Do you remember right now firing it yourself?

   ACC: That actual involvement, sir, what I was firing and what I was firing at I don't remember exactly what was happening at the time, sir, but from the witnesses, and I do remember the weapon being fired, and I do believe in my own mind that I was the one that fired the weapon at the time, sir.

be without merit. The military judge detailed the elements of the offense to the appellant. The appellant had no questions about the elements and persisted in his guilty plea.[2]

### III

■ The appellant next urges that reversal is required because the convening authority failed to serve the appellant with a copy of the record of trial as soon as it was authenticated. From the record, the following chronology is apparent:

27 September 1977—Record of trial authenticated by military judge.

18 October 1977—Record of trial mailed to appellant by registered mail. Copy of post-trial review and authenticated copy of record of trial served on individual defense counsel personally.

28 October 1977—Action of convening authority.

11 November 1977—Individual defense counsel returns to Office of Staff Judge Advocate post-trial review and authenticated copy of record of trial without comment and without signing the authentication page of record of trial.

It is not clear, therefore, that the copy of the record of trial was not "given to the accused as soon as it [was] authenticated," as required by Article 54(c), UCMJ, 10 U.S.C. § 854(c). We must now determine if this was prejudicial and reversible error or if the government complied with the "spirit" of Article 54(c). *United States v. Cruz-Rijos,* 1 M.J. 429, 432 (C.M.A.1976). In *Cruz-Rijos* and *United States v. Goode,* 1 M.J. 3 (C.M.A.1975), the United States Court of Military Appeals has made it clear that it views the requirement of material prejudice, Article 59(a), UCMJ, 10 U.S.C. § 859(a), as a controlling principle in applying the Article 54(c) requirement. In the case *sub judice* the individual defense counsel received the record of trial and a copy of the post-trial review by *personal service* and personally signed an acknowledgement of receipt fully ten days before the convening authority's action. Two weeks later the record of trial and post-trial review were returned without comment. The convening authority disapproved some of the findings of guilty and reduced the sentence substantially below that to which he had agreed in the pretrial agreement.[3] Under these circumstances we find no material prejudice to the accused, Article 59(a), UCMJ, and that the government has "satisf[ied]´the spirit of Article 54(c)." *United States v. Cruz-Rijos,* 1 M.J. at 432.

### IV

■ Lastly, the appellant urges that the military judge erred by not advising the

---

MJ: Well, I've gone through the elements of all these offenses with you before, this morning. Do you believe that all those elements are in fact true?

ACC: Yes, sir, I do.

MJ: One of the elements of the offense of wrongfully discharging a firearm is that you wilfully discharged the firearm. That is, you intentionally pulled the trigger under circumstances such as to endanger human life. Are you satisfied in your own mind and willing to admit that you did in fact wilfully pull that trigger?

ACC: Yes, sir.

2. The judge stated the pertinent element as follows: "the third element is that your discharge of that firearm under the circumstances was such as to endanger human life . . . the term, 'under the circumstances such as to endanger human life,' refers to a reasonable potentiality for harm to human beings in general." The accused indicated he had no questions as to the elements and was offered the

opportunity to confer with his counsel. He thereafter persisted in his guilty plea.

3. The staff judge advocate, in the post-trial review, recommended that the findings of guilty of unlawful confinement be disapproved, citing *United States v. Johnson,* 3 M.J. 361 (C.M.A.1977). He also recommended that the forfeiture portion of the sentence be reduced from forfeiture of all pay and allowances to forfeiture of $250.00 pay per month for six months. The convening authority accepted those recommendations. The pretrial agreement provided that the convening authority would:

Disapprove any confinement at hard labor adjudged in excess of nine (9) months, and if a dishonorable discharge is adjudged to approve a bad conduct discharge in its stead. All other legal punishments adjudged by the court *will be approved.* (Emphasis supplied). Obviously, the reduction of total forfeitures to forfeiture of $250.00 per month for six months was a substantial clemency action.

appellant, sua sponte, of his right to defend himself without the assistance of counsel.

We have carefully reviewed the brief filed by the appellant and have thoroughly researched reported cases. Appellant cites no authority, nor has our research revealed any that requires a sua sponte advice by the trial judge that an accused has a right to proceed pro se.

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court, Mr. Justice Stewart writing for the majority, articulated the historical roots of the Constitutional right to defend oneself in a criminal proceeding. Suffice for our purpose here, it is now an established Constitutional right. 422 U.S. at 812–32, 95 S.Ct. 2525 (and cases cited therein). Our reading of *Faretta* indicates that the law requires an advice from the judge *after* there has been a request to proceed pro se. The Court, says,

> There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. Id. at 832, 95 S.Ct. at 2540, [citing] *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

The Court further states at page 835, 95 S.Ct. at page 2541,

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. . . . [H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." (Citations omitted).

*Faretta* must be read, it seems to us, against its factual background. Well in advance of trial, Faretta "unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Id.* However, the trial judge twice forced counsel upon the accused. He in fact ruled that Faretta had no Constitutional right to proceed pro se. *Id.* at 812, n. 4, 95 S.Ct. 2525. These actions were taken in a jurisdiction, like all civilian jurisdictions in our system of jurisprudence, where, in the words of the United States Court of Military Appeals, "[a]n accused . . . has no choice between appointed counsel and personally selected counsel; for him, it is either one or the other, depending upon his financial resources." *United States v. Jordan,* 22 U.S.C.M.A. at 166, 46 C.M.R. at 166 (1973).

As pointed out in *Jordan,* a military accused has a choice, and because of the military's specific statutory provision (Article 38, UCMJ, 10 U.S.C. § 838) concerning the *right* to appointed counsel, we find a factual and legal distinction. It is one thing to sua sponte advise someone of the problems of proceeding without the benefit of counsel *after* a choice to proceed pro se has been attempted, and quite another thing to advise him of those problems *before* the choice is made. We know of no requirement that an accused be advised of all of the possible rights he has under the Constitution. Once a choice has been made to proceed without counsel, however, clearly, then under the law, there is a requirement that the trial judge advise the accused *regarding the exercise* of that Constitutional right to ensure that the choice is knowing and informed. We find this requirement to be even more applicable to the military environment. Again, the highest court in the military justice system has spoken on this matter:

> Many [military accused] are now serving . . . away from home, family, and friends for the first time and some are of an age where in other jurisdictions they would be held responsible only as juveniles. *These factors call for extraordinary concern.*

*United States v. Donohew,* 18 U.S.C.M.A. 149, 152, 39 C.M.R. 149, 152 (1969). (Emphasis added). And again more recently by the present court:

> Most of the servicemen and women who experience the unhappy distinction of being tried and convicted by courts-martial are young and inexperienced in court procedures and the various machinations of the law. . . . Often the trial takes place in geographic areas far removed from their homes and, indeed, outside the continental United States. Many such persons are convicted by the tribunal before whom they are tried and sentenced *inter alia* to punitive discharges which adversely affect their lives and careers forever thereafter.

*United States v. Palenius,* 2 M.J. 86, 92 (C.M.A.1977). Therefore, we decline to extend the trial judge's obligation to instruct every military accused as a matter of law on their right to proceed pro se. *United States v. Stoutmire,* 5 M.J. .724 (A.C.M.R. 1978). It seems to us that under the military circumstances, "[w]hat were contrived as protections for the accused should not be turned into fetters." *Adams v. United States,* 317 U.S. 269, 279, 63 S. Ct. 236, 242, 87 L.Ed. 268 (1972). To make such an instruction a requirement would be, in our view, to create a fetter out of a protection for military accused. Accordingly, we find no error in the military judge's instructions as to the appellant's right to counsel.

The findings of guilty and the sentence are AFFIRMED. However, the application of the forfeitures is deferred until the sentence is ordered into execution. (Para. 88*d* (3), MCM, 1969 (Rev.); Art. 57(a) and (c), UCMJ, 10 U.S.C.A. § 857(a, c)).

Senior Judge FULTON and Judge TALIAFERRO concur.