**UNITED STATES, Appellee,**

v.

**Thomas J. BOWIE, Jr., Specialist Five,
U.S. Army, Appellant.**

No. 49057.

SPCM 17937.

U.S. Court of Military Appeals.

March 31, 1986.

For Appellant: *Captain Robert S. Johnson, Jr.* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Michael D. Graham, Captain Harry L. Williams, Jr.* (on brief);

*Major Eric T. Franzen* and *Captain Lorraine Lee.*

For Appellee: *Lieutenant Colonel Thomas M. Curtis* (argued); *Colonel James Kucera* and *Lieutenant Colonel Adrian J. Gravelle* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to his pleas, Bowie was found guilty by a special court-martial military judge of various offenses involving disrespect and willful disobedience, in violation of Articles 89 and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 889 and 891, respectively. His sentence to a bad-conduct discharge, confinement and forfeiture of $367.00 pay per month for 4 months, and reduction to Private E-1 was approved by the convening authority; and the Court of Military Review affirmed the findings and sentence. 17 M.J. 821 (1984).

We granted review on this issue specified by the Court:

WHETHER THE MILITARY JUDGE ERRED TO ACCUSED'S PREJUDICE BY FAILING TO APPRISE HIM HE HAD A RIGHT TO REPRESENT HIMSELF, WHEN ADVISED THAT ACCUSED HAD DISCHARGED BOTH HIS APPOINTED COUNSEL AND HIS INDIVIDUAL MILITARY COUNSEL OR SECURE HIS AFFIRMATIVE CONSENT TO CONTINUED REPRESENTATION BY ONE OR ALL OF THE STATED COUNSEL.

I

On December 11, 1981, Judge James E. Noble conducted an out-of-court session where Captain James Coyne and Captain Herbert Irish, the appointed defense counsel and assistant defense counsel, were both present. Upon being informed by the judge of his rights to counsel, appellant requested that he be represented by a Captain Richard Boone. However, after some

inquiry, it appeared that Captain Boone was a Chaplain and that, although he had some legal training at a law school, he had not received a law degree.[1] The military judge informed Bowie that the Manual for Courts-Martial precluded his representation by a nonlawyer. *See* para. 6]*f(*3), Manual for Courts-Martial, United States, 1969 (Revised edition).[2] Thereupon, appellant indicated that he wished to obtain a civilian counsel; and the case was continued until January 28, 1982.

> As Judge Noble emphasized to appellant:
> I want to point out to you further that you cannot thwart or stop the process of the courts-martial from going on simply by not having a lawyer. I'm affording you opportunity to obtain a civilian counsel, and should you not obtain a civilian counsel, the court will proceed, whether you like it or not, with your detailed defense counsel defending you.

Bowie indicated his understanding of this advice and acknowledged that he had been given "fair time" to obtain a lawyer.

When the court reconvened on February 16, 1982, Judge Richard J. Hough was presiding, and Captain Coyne, the appointed defense counsel, was representing appellant along with Captain Randall E. Pretzer, individual defense counsel. Captain Irish had been excused as assistant defense counsel; and, upon inquiry by the judge, Captain Coyne stated that Irish had not at any time formed an attorney-client relationship with the accused.

The judge reviewed with appellant his rights to counsel and then inquired, "Are you satisfied to have Captains Pretzer and Coyne act as your only lawyers in this case?" Bowie responded in the negative and explained:

> I don't feel that my case have [sic] been well prepared for the reason being that there are witness [sic] stateside that are not here. There are witness [sic] still here in Germany at least two I know of for a fact that have not been talked to by the defense.

Responding to a question by Judge Hough, the individual defense counsel, Captain Pretzer, stated:

> I've interviewed numerous witnesses on this case and made an effort to contact some of those people in the States and with no avail. I had my own philosophy on this particular case and theory which I want to pursue and I've tried to discuss this with Specialist Bowie and have gotten nowhere whatsoever. He has told me as of this last Friday that he did not want my services anymore. Since I have been somewhat if you will fired by the man, I feel no need to represent him anymore and I request at this time to be excused from the case. Furthermore, Specialist Bowie has related to me that he wishes to hire civilian counsel and I said, "That's fine" and I talked to him about some of the counsel on the list.

Nonetheless, in answer to further questions, Pretzer indicated that he was prepared to go to trial at the time and felt that he "had enough time and opportunity to discuss this case with ... [Bowie] and to discuss the case with the witnesses, the relevant witnesses involved."

Captain Coyne, the appointed defense counsel, stated that he lacked adequate opportunity to prepare the case and gave this explanation:

> Since I first interviewed Specialist Bowie back on the 24th of November I advised him of his rights to counsel. At that time he asked me to request individual defense counsel. Since that time there have been two requests for individual defense counsel. He has hired and fired a civilian counsel. During this whole time he has not—he has indicated to me that he did not wish to discuss this case with me.

---

1. According to Captain Boone, he had 60 hours of credit and needed 30 more hours. Although he indicated that the law school which he had attended was accredited by the American Bar Association, the assistant defense counsel stated that, according to information in the *Martindale-Hubbell Legal Directory,* it was not.

2. *See also United States v. Kraskouskas,* 9 U.S.C. M.A. 607, 26 C.M.R. 387 (1958).

Coyne then filed with the court documents which appellant had executed on February 5, 1982, and which released him and Captain Irish as defense counsel because Captain Pretzer had been made available as individual defense counsel.

Thereafter, the judge reviewed with counsel the various steps taken to provide appellant representation to his liking. These included an effort to obtain a civilian lawyer, Robert J. Fiore, in Frankfurt, and the appointment of Captain Pretzer as individual defense counsel. Despite a two-week continuance for Pretzer to interview witnesses, appellant wanted a further continuance in order to make a further effort to hire a civilian attorney. Trial counsel resisted this effort because the Government had "three stateside witnesses present here today for this trial." The judge then stated:

Specialist Bowie, I think you're represented by qualified lawyers and I'm not going to let you delay this trial anymore. So any request for continuance at this time to seek further attorneys is denied. It appears that counsel for both sides have the requisite qualifications and all personnel of the court required to be present have been sworn. Additionally I'd add to that I strongly urge you to cooperate with their assistance, the assistance that they're going to be providing you and the assistance they are providing you. They can help you alot I'm sure in this case.

Shortly thereafter, the judge reiterated:

Now Specialist Bowie, I want to also again encourage you to cooperate with your defense counsels. If you feel like you need more time during the course of your trial to discuss what's occurring in the trial, please ask me for time. I'll give you reasonable time to talk to your lawyers.

After a brief recess the trial continued before Judge Hough, appellant having requested trial by judge alone. Examination, cross-examination, and argument were conducted by Captain Pretzer, the individual defense counsel, although Captain Coyne apparently was present at all times.

While the Government was presenting its case-in-chief, this colloquy occurred:

IDC During the recess, Your Honor, a note was handed to me which was taken by one of the court personnel wherein Mrs. Bowie, the wife of the accused here Specialist Bowie, had contacted the office of Waco Carter and spoke I believe to a Mr. Bill Smith. Mr. Bill Smith had relayed a message to the personnel that he was interested to the best of my knowledge in representing Bowie but Bowie had to contact him first and I just wanted to bring that note to the attention of the court, Your Honor.

MJ Well, do I understand—do I understand you as trying to make a motion again for a continuance in this case until your client talks with Mr. Smith?

IDC Yes, Your Honor.

MJ It's my understanding that your client has not talked with Mr. Smith previous to this time. Is that correct?

IDC That's correct, Your Honor.

MJ Is that correct, Specialist Bowie?

ACC Sir, I contacted this firm and it should be on a recording of yesterday on a recording but I could not able talk [sic] to that person but it's on the recorder.

MJ Very well. Well, my ruling still stands.

## II

The sixth amendment grants an accused the right to the assistance of counsel in his defense. In light of this language, the Supreme Court ruled in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), over strong dissent, that a defendant has a constitutional right to conduct his own defense. "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819–20, 95 S.Ct. at 2533, 45 L.Ed.2d 562. This right of self-representation was reaffirmed in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79

L.Ed.2d 122 (1984), where the Court also established standards for the participation of standby counsel.

■    Although the right of self-representation was not referred to in the Uniform Code, which was enacted long before the decision in *Faretta*, we do not see any reason why it should be absent from military justice. Certainly no military exigency would require its absence. Therefore, we conclude that a military accused who so chooses may "go it alone," release his counsel, and appear *pro se*.

This, however, is a risky course to follow; and generally judges warn defendants about the risks implicit in representing themselves at a criminal trial. For this reason, it has been held that where a defendant is considering self-representation, the presiding judge should explain to him on the record

> that it is advisable to have a lawyer, because of his special skill and training in the law and that the judge believes it is in the best interest of the defendant to have a lawyer, but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself.... In other words, there must be a record sufficient to establish to our satisfaction that the defendant "knows what he is doing and his choice is made with his eyes open."

*United States v. Plattner*, 330 F.2d 271, 276 (2d Cir.1964). Moreover, the appointment of standby counsel, to whom the accused may turn for advice or who may take over the defense for him if he finds himself overwhelmed by the complexity of self-representation, is a precaution used by many judges. *See McKaskle v. Wiggins, supra.*

Bowie's complaint, however, is not that he was allowed to undertake self-representation without proper warning or assistance but instead that he was deterred from representing himself by the judge's failure to advise him specifically that he could discharge his two lawyers and represent himself. According to appellate defense counsel, the failure to advise appellant of his right to self-representation negated the existence of that right.

We have been cited no precedent which requires giving notice to an accused that he is entitled to represent himself. Even though the Manual for Courts-Martial does recognize the right of self-representation, it does not provide for any warning as to that right. Likewise, military precedent does not demand that an accused be advised that he may represent himself. *See United States v. Tomberlin*, 5 M.J. 790 (A.C.M.R. 1978); *United States v. Stoutmire*, 5 M.J. 724 (A.C.M.R.1978). Not every constitutional right requires that it be accompanied by a warning of its existence. For example, the protection of fourth-amendment rights does not require specific warning that one need not consent to a request to search his property. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■    Self-representation is such a dangerous course of action for an accused and in most instances so contrary to efficient judicial administration that the dissenters in *Faretta* were unwilling to acknowledge its existence. The same concerns which they expressed lead us to believe that, absent binding precedent to the contrary, we should not impose any requirement that would tend to encourage utilization of the right of self-representation. Unless an accused has specifically expressed a desire for self-representation, there is no need for a trial judge to discuss the subject. Accordingly, we reject Bowie's claim that his right to self-representation was violated.

■    If, however, we had concluded that, by failing to advise of the right to self-representation, the military judge had committed error—even of constitutional dimensions—we would be convinced beyond a reasonable doubt that it was harmless. *Cf. United States v. Remai*, 19 M.J. 229 (C.M. A.1985). The risk of injury to an accused's interest by reason of unwanted interference by appointed counsel with his self-representation is less in a trial by judge alone—as here—than in a trial before members. *Cf. McKaskle v. Wiggins, supra.*

Furthermore, some of the documents filed in connection with a post-trial attack by Bowie on the competence of his counsel make clear that in this case he was his own worst enemy.[3] His dissatisfaction with his counsel apparently stemmed initially from their recommendation that he seek an administrative discharge, rather than undergo a trial by court-martial. As later events demonstrated, this recommendation was quite sound. At trial Bowie insisted on taking the stand despite his counsel's recommendation to the contrary. As they feared, the cross-examination of appellant when he testified undercut any meager hope of acquittal and tended to enhance the sentence.

Commendably Judge Noble and Judge Hough made every reasonable effort to provide appellant a lawyer to his liking. However, they could not delay trial indefinitely while Bowie hired and fired attorneys. Even when he denied any further continuance, Judge Hough went the extra mile by keeping Captain Coyne, the appointed defense counsel, in court as a standby counsel, even though Captain Pretzer, the individual defense counsel, was present to represent appellant. In view of all of the circumstances and from our examination of the record, we are sure that Bowie received a fair trial in which his rights were scrupulously protected.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

3. The record is replete with indications of Bowie's inability to get along with lawyers. This inability, in turn, may reflect the same attitudes that led to commission of the offenses of which he was convicted.