UNITED STATES, Appellee,

v.

Kevin D. BEATTY, Seaman Recruit,
U.S. Navy, Appellant.

No. 48,442.
NMCM 83–3444.

U.S. Court of Military Appeals.

Dec. 18, 1987.

For Appellant: *Lieutenant Donald F. O'Connor,* JAGC, USNR (argued); *Lieutenant Commander Frederick N. Ottie,* JAGC, USN and *Lieutenant Burke M. Wong,* JAGC, USNR (on brief); *Lieutenant Commander William A. DeCicco,* JAGC, USN.

For Appellee: *Lieutenant Darlene M. Connelly,* JAGC, USN (argued); *Captain W.J. Hughes,* JAGC, USN and *Lieutenant Robert G. Sosnowski,* JAGC, USN (on brief); *Lieutenant Sandra R. Ganus,* JAGC, USNR.

*Opinion*

EVERĖTT, Chief Judge:

Contrary to his pleas, Seaman Recruit Beatty was convicted[1] by a military judge sitting as a special court-martial of three failures to go, a three-day unauthorized absence, being disrespectful to two superior petty officers, willful disobedience of the orders of two superior petty officers, and assault and battery, in violation of Articles 86, 91, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, and 928, respectively. The judge sentenced appellant to a bad-conduct discharge. The findings and sentence were approved by the convening and the supervisory authorities and then were affirmed by the Court of Military Review, over a dissent by Chief

---

1. Court-Martial Order No. 5–83 does not reflect the disposition of specification 2 of Additional Charge II (not guilty) or of Additional Charge III and its specification (withdrawn after arraignment—R 21).

Judge Eoff. We granted appellant's petition for review to consider a specified issue concerning his representation at trial.[2]

## I

This appeal is from a rehearing on findings and sentence. Six charges with a total of 24 specifications were originally preferred[3] against Beatty on October 7, 1982, and then 17 of these specifications were referred for trial by special court-martial. Lieutenant Robert Wheelock was detailed as defense counsel for this trial. However, at the first Article 39(a)[4] session, it was announced that appellant wished Lieutenant Robert Leventhal to serve as his individual military counsel. Levanthal was a reservist who would be called to active duty to participate in the defense. However, at the next Article 39(a) session, it was stated that, instead of Lieutenant Leventhal, appellant was now asking to be represented by Lieutenant Athiel Jones, a defense counsel at the Naval Legal Service Office in Jacksonville, Florida. A continuance was granted; ultimately Lieutenant Jones was made available as individual military counsel, Lieutenant Wheelock being excused as detailed counsel.

In turn, Lieutenant Jones negotiated a pretrial agreement with the convening authority whereunder appellant was to plead guilty to certain charges; the Government would not offer proof as to the remaining charges; and a ceiling was set on the sentence to be approved. When trial began, the military judge accepted the pleas that were proffered and entered findings consonant therewith. He then sentenced Beatty to a bad-conduct discharge, 4 months' confinement, and forfeiture of $150 pay per month for 6 months.

On January 5, 1983, the convening authority, acting pursuant to the pretrial agreement, approved the findings and so much of the sentence as provided for a bad-conduct discharge, confinement and forfeiture of $150 pay per month for 2 months. However, on February 15, 1983, he withdrew this action and substituted the following[5]:

> It appears from the record of trial that the accused's pleas of guilty were improvidently entered under Article 45(a), UCMJ. The findings of guilty and sentence are disapproved. A rehearing is ordered before another court-martial to be hereafter designated.

On March 10, 1983, two additional charges were preferred against Beatty. These additional charges, together with the original charges,[6] were referred to another special court-martial, which contained none of the persons who had been appointed to serve on the first court-martial.

Lieutenant Jones, who had been individual military counsel at the first trial, was detailed as the defense counsel for this second court-martial; and, at an Article 39(a) session which preceded the trial, trial

---

2. We specified the following issue:
   WHETHER UNDER THE PARTICULAR FACTS OF THIS CASE THE MILITARY JUDGE ERRONEOUSLY ADVISED APPELLANT HE HAD NO RIGHT TO INDIVIDUAL MILITARY COUNSEL WHEN HIS DETAILED COUNSEL HAD PREVIOUSLY SERVED AS INDIVIDUAL MILITARY COUNSEL AT A PREVIOUS HEARING OF THE CASE AND APPELLANT SPECIFICALLY STATED THAT HE DID NOT DESIRE THAT THE COUNSEL CONTINUE TO REPRESENT HIM AT THE INSTANT TRIAL.

3. The charges are not set out at the proper place in the record of the original trial (R. 7). However, they are included in the pretrial agreement (app. ex. IV). Care must be taken to ensure the charges are included in their proper place in the record so they may be easily located.

4. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

5. As was noted at the second trial, there is nothing in the original record of trial, the allied papers of that record, or elsewhere which reveals why appellant's original pleas of guilty were found to be improvident. No court-martial order was issued after the first trial.

6. At the first trial, the judge found appellant not guilty of some of the charges which were referred to the second court-martial for trial. No one seems to have made an issue of this at trial; but appellant was again acquitted of these same charges. In this connection read U.S. Const. amend. V cl. 2; Art. 44(a), UCMJ, 10 U.S.C. § 844(a).

counsel noted: "At the original trial, the detailed trial [sic] counsel was relieved and replaced by Mr. JONES as independent [sic] military counsel, and therefore, detailed to this rehearing is [sic] the accused's chosen defense counsel." Then the military judge explained to appellant, "[Y]ou also have the right to be defended by a civilian lawyer provided by you at no expense to the government."

> At this point, Beatty responded that subsequently because of a failure to communicate and some mistakes that we made in our pretrial agreement, let's say for instance there was some—the reason for this retrial hearing, I feel that it was necessary that I have another attorney that I feel would be more competent and capable of helping me in my defense, all due respect, sir, to Lieutenant JONES and yourself.

Beatty also noted that he had "asked for appeal, but they told me not at this time to be able to present it, the decision."

The military judge asked for a "general overview as to why we're having the rehearing and whether it relates to conduct of defense counsel at the prior trial?" Counsel agreed with the judge that the findings had been set aside because of the first military judge's action "in accepting the guilty pleas" at the earlier trial. Trial counsel noted that the record contained no explanation "as to exactly why the rehearing was ordered." The military judge then stated that he would "construe" any mistake to have been "on the part of the military judge involved and not the defense counsel"—a conclusion to which both the Government and Lieutenant Jones agreed. The military judge then addressed the accused in this manner:

> Seaman Recruit BEATTY, from what counsel have told me here, if a mistake was made that it wasn't your mistake or it wasn't your counsel's mistake, it would be the mistake of the judge that presided in the case and possibly the trial counsel

for not pointing out to the judge the additional questions that should be asked. My understanding of military law is that you are not entitled to a second individual military counsel. Now you may, if you want, retain civilian counsel, but that would be at your expense and no expense to the government. Do you understand?

Beatty answered in the affirmative.

Next trial counsel stated "for the record" that, on February 28, 1983, appellant "asked the convening authority for" Lieutenant Faye A. Burner, as individual defense counsel but "that request was denied by message dated 18 March, [based on] the unavailability of MS BURNER."[7]

Subsequently, Beatty indicated that he would like to obtain a civilian lawyer, and the court granted a 2–week continuance for that purpose. Six weeks passed before the court reconvened; and at this time the military judge observed that no civilian attorney was present. He then asked appellant about his wishes, and Beatty replied that he had been unsuccessful in raising the money for payment of a retainer. The military judge informed Beatty that, in his view, "adequate time" had been granted to retain counsel and that the trial would proceed.

He inquired who would represent appellant and was told by Lieutenant Jones that Beatty "desire[d] to represent himself." The military judge then announced:

> Lieutenant JONES will remain at counsel table with you in his capacity to assist you as there are, as you know, all kinds of rules for running courts. Most of us take a lot of time in school to learn these rules.

Next, trial counsel pointed out that, since the last court session, the convening authority had referred to the court-martial a third additional charge, which alleged an Article 86 violation; but this additional charge was being withdrawn since it had

---

**7.** Apparently, Beatty did not appeal from denial of the individual military counsel whom he had requested for the second trial; and at trial no issue was made as to the determination of unavailability.

been "referred to this trial after the arraignment on all the other Charges, and therefore ... cannot be heard." [8]

After some colloquy between the military judge and both counsel "as to whether an accused who represents himself *pro se* is administered an oath," the military judge inquired of Beatty as to his choice of forum. When Beatty, after conferring with Lieutenant Jones, signed the request for trial before military judge alone, trial counsel objected and argued that in this "unusual case" there should be "a jury verdict" rather than "a military judge alone trial." Defense counsel responded that Beatty had "made a knowing and intelligent decision" and was "confident that he" would "receive a fair trial" from the judge. The judge "approved" the request, and Beatty entered pleas of not guilty to all the charges. Trial then commenced.

Throughout the trial, Lieutenant Jones conducted the defense. He made the opening and closing statements for the defense on the merits and as to sentence; he explicitly waived certain matters dealing with the authenticity of documents; and—except for one question posed by appellant to a witness—he conducted the examination and cross-examination of witnesses. Lieutenant Jones also performed the post-trial duties of a defense counsel. At no time did Beatty voice any further objection to Lieutenant Jones' participation in the defense of the case.

## II

### A

The military judge proceeded on the premise that, if an accused had requested and had been provided individual military counsel at his initial trial, he was not entitled to another opportunity to request counsel when his case was reheard. Under this view, the rehearing is considered a continuation of the original trial, insofar as the right to select counsel is concerned.

The decision in *United States v. Villines,* 9 M.J. 807 (N.C.M.R.1980),[9] supports this position. There, the Court of Military Review held that an accused who was provided with counsel of his own selection at a trial by court-martial would not be entitled to request individual military counsel for a second trial, after a mistrial was declared. The Court of Military Review relied on its earlier ruling in *United States v. Kilby,* 3 M.J. 938 (N.C.M.R.1977), that an appellant who had been furnished individual counsel of his own choice had no right to request a different individual counsel, unless he could show "extraordinary circumstances ... which, in the interests of justice and fairness, would necessitate affording an accused more than one opportunity to have an individual military counsel detailed to represent him." 9 M.J. at 808–09, quoting from 3 M.J. at 944.

However, as appellate defense counsel have called to our attention, *United States v. Palmer,* 44 C.M.R. 608 (A.C.M.R.1971), points in a different direction. There, it was stated that a rehearing constitutes "a new, distinct, and separate trial"; and so the military judge must specifically readvise an accused of his right to counsel in the manner prescribed by *United States v. Donohew,* 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969).

We agree with the view expressed in *Villines.* The legislative history of Article 63, UCMJ, 10 U.S.C. § 863—which concerns rehearings—states that "[a] rehearing is a continuation of the former proceeding." Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1180 (1949). Thus, new charges need not be preferred in connection with the rehearing; and, in the

---

8. *See* para. 65*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

9. The petition for review submitted by Villines was denied, 10 M.J. 116 (1980); but the Acting Judge Advocate General of the Navy certified a question of law unrelated to appellant's right to counsel, *see* 9 M.J. 210. This question was answered in three opinions by the judges of this Court, resulting in affirmance of the decision of the Court of Military Review. 13 M.J. 46 (1982).

instance of a general court-martial, there is no necessity for conducting a new Article 32, UCMJ, 10 U.S.C. § 832, investigation.[10]

Usually, an accused is entitled to continue an attorney-client relationship that he has begun; and so, unless special circumstances exist, he should be represented at a rehearing by the same counsel who was furnished him at the initial trial. *Cf. United States v. Gnibus*, 21 M.J. 1 (C.M.A. 1985). Undoubtedly, in this case, the convening authority had this principle in mind when he detailed Lieutenant Jones to represent Beatty. Indeed, if Jones had not been detailed as defense counsel, Beatty could have insisted that he be made available as individual military counsel in order to avoid disrupting the existing attorney-client relationship.

If, having been furnished Jones as detailed counsel, Beatty were entitled to request another counsel for the rehearing, the question would then arise whether furnishing the requested counsel would permit excusing Lieutenant Jones from participation in the rehearing and thereby breaking an established attorney-client relationship. However, if Jones could not be excused, Beatty would receive the services of two individually selected defense counsel—a result somewhat at odds with the policy of Article 38(b) of the Uniform Code, 10 U.S.C. § 838(b). Fortunately, under the *Villines* approach, this issue does not arise.

While we believe that generally an accused is not entitled to selection of another individual military counsel after his initial choice has been granted, we recognize that the situation would be different if the initial findings and sentence in this case had been set aside because of ineffective representation on the part of Lieutenant Jones. If such "extraordinary circumstances" existed, it would not be "in the interests of justice and fairness" to compel an unwilling accused to accept representation by the same attorney whose ineptitude had resulted in vacation of the earlier results. However, our examination of the record—including the record of the earlier trial—gives no indication that Lieutenant Jones rendered substandard performance at either the first trial or at the rehearing.

### B

Although we agree with the military judge's premise that an accused who has elected individual military counsel should not automatically receive an opportunity to select other counsel for a rehearing, unfortunately this principle does not apply fully to the facts here. Beatty's second trial was more than a rehearing on the original charges. Instead, the rehearing was combined with a trial of two unrelated additional charges. *See* paras. 81*d* (1) and 92, manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, he was convicted of some of the additional charges.

If those additional charges had been tried separately, Beatty would have been entitled to make a new request for individual military counsel. The statutory right granted by Article 38(b) would not be limited by his selection of counsel to represent him as to other charges. That right cannot be circumvented by joining new unrelated charges for trial with charges that are being reheard. Accordingly, the military judge erred in holding that appellant was not entitled to request other individual counsel since the convening authority had referred additional charges for trial.

Furthermore, the combination of additional charges with those originally tried would not constitute good cause for the convening authority to terminate the attorney-client relationship that appellant had

---

**10.** At a rehearing, an appellant is allowed to make a new election as to the forum that will try him—namely, whether he will be tried by the members of the court, will request enlisted members, or will ask for trial by military judge alone. However, this second election is predicated in part on the statutory policy that an accused should not elect trial by military judge alone unless he knows the identity of the judge who will try him. If an accused has elected trial by military judge alone, and the rehearing is to be before the same judge, it is arguable that the accused should be bound by his initial election. *Cf. United States v. Roberts*, 18 M.J. 192, 196 (C.M.A.1984) (Everett, C.J., concurring in the result).

already established with Lieutenant Jones as to the original charges. Accordingly, Beatty would have the right to be represented by Lieutenant Jones as to the old charges, because as to those charges he had already established an attorney-client relationship with Jones, and he would be entitled to request individual military counsel as to the additional charges. Only in this way would Beatty receive the rights guaranteed under Article 38. Lieutenant Jones performed ably at trial. However, deprivation of a statutory right to request counsel cannot be analyzed in terms of specific prejudice but, instead, mandates automatic reversal. *Cf. Wilson v. Mintzes,* 761 F.2d 275 (6th Cir.1985).[11]

Accordingly, the findings of guilty on the additional charges cannot stand, since it is clear that as to those charges Beatty was entitled to select additional counsel and would have desired to exercise that right. Likewise the sentence, which in part is based on those findings, cannot stand. On the other hand, as to the original charges of which he was found guilty at the first trial, Beatty was not deprived of any statutory right; and we do not think these findings of guilty are tainted by the error which went only to the other charges.

### III

The members of the court below disagreed as to whether Beatty's right to representation was adequately protected. We have recognized that a military accused in a court-martial has the same right to self-representation possessed by a civilian defendant. *See United States v. Bowie,* 21 M.J. 453 (C.M.A.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 83, 93 L.Ed.2d 37 (1986); *see also Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, because of the practical problems involved in self-representation, we also have concluded that a military judge is not required to advise an accused with respect to this right. 21 M.J. at 456.

If an accused persists in his request for self-representation, a judge, after proper inquiry, must allow him to defend himself; but he may also appoint standby counsel to assist the accused. *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Such an appointment is a means to reconcile the accused's desire for self-representation with the public's need to assure that courts run smoothly and that justice is done—and is perceived to have been done. Of course, the standby counsel must not interfere with an accused's control over the case, for the right to counsel belongs to the accused rather than to his lawyer.

Apparently, the judge intended to have Lieutenant Jones serve as standby counsel. However, before doing this, he should have conducted a hearing into appellant's understanding of self-representation and perhaps have explained the role of standby counsel. In this way, the judge would have assured that Beatty was aware of the consequences of his choice; and, indeed, if Beatty had been aware thereof, he might have elected to withdraw his request for self-representation.

As it was, the judge himself was apparently not aware of the implications of self-representation, because—so far as we can determine from the record—the judge conducted the rest of the trial in virtually the same way in which he would have tried an accused who had not asked to represent himself. Chief Judge Eoff, dissenting, concluded that the military judge's failure to safeguard more fully appellant's right of self-representation required reversal of the findings and sentence. We disagree.

Although Lieutenant Jones took charge of every aspect of the defense, appellant never indicated any objection and clearly acquiesced in receiving his services. At no point did Beatty indicate any desire to address the court or take over the examination of witnesses. Jones provided a vigor-

---

**11.** This decision was on remand from the Supreme Court. *See Mintzes v. Wilson,* 429 U.S. 926, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984).

ous defense; and it is apparent that appellant was satisfied with his performance.

We have concluded that some of the findings of guilty must be reversed because of deprivation of appellant's statutory right to individual military counsel, but we do not think that the same remedy is required for the judge's omission to safeguard appellant's right of self-representation. *Cf. United States v. Bowie, supra.* Instead, the test should be whether we are convinced beyond a reasonable doubt that the judge's error did not produce a more adverse trial result for appellant than if he had represented himself. *Cf. United States v. Remai,* 19 M.J. 229 (C.M.A.1985); *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under this test, Beatty is entitled to no relief.

## IV

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to Additional Charges I and II and their specifications; the findings of guilty thereon are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further proceedings consistent with this opinion.

Judge SULLIVAN did not participate.

COX, Judge (concurring in the disposition):

I strongly disagree with Chief Judge Everett's conclusion that appellant's right to individual counsel under Article 38, Uniform Code of Military Justice, 10 U.S.C. § 838, was violated. Anyone construing the lead opinion as the law of this Court does so, therefore, at their own risk. Nonetheless, I join in the disposition *simply to hasten an end to this already 4-year-old special court-martial.* Were I to dissent, reargument before the full Court would be necessitated, creating still further delay. Rule 6(a), Rules of Practice and Procedure, United States Court of Military Appeals. In my judgment, the relatively nominal relief provided in the lead opinion makes expediency preferable to theoretical purity.

I wish to make it clear, however, that I view the mandate of Article 38(b)(3)(B) as being fully satisfied by the provision of *one* individual counsel per accused, even if additional charges are added later. The request for individual counsel relates to the court-martial, not to separate charges. Otherwise, added to the litany of multiplicity for charging, multiplicity for findings, multiplicity for sentencing, we would have the new ball game of multiplicity for counsel!

My conclusion in no way strips appellant of any constitutional rights because Article 38 provides far broader counsel rights than does the Sixth Amendment to the Constitution. *United States v. Johnson,* 21 M.J. 211 (C.M.A.1986); *United States v. Gnibus,* 21 M.J. 1 (C.M.A.1985). Thus, absent a showing of good cause, adding charges gives no automatic right to additional counsel.

Obviously, one can readily envision circumstances amounting to good cause. For example, an accused charged with "routine" drug violations might well request a certain attorney whose skill and experience make him or her adequate for the purpose. The addition thereafter of capital murder charges might well, however, necessitate detailing more experienced counsel. This, of course, relates to the quality of representation, not quantity. As to quality, no special new rules are required. *See United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

In any event, automatic reversal is not appropriate in the circumstances of this case. Rather, Article 59(a), UCMJ, 10 U.S.C. § 859(a), directs a test for prejudice. Even if appellant's statutory rights were violated—which I dispute—the record reveals no hint of ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684–86, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Appellant, for his part, supplies no clue as to how the addition of another lawyer would have changed the

result or otherwise avoided what prejudice he perceives. Furthermore, the evidence against appellant was overwhelming, and the maximum punishment for the unaffected charges far exceeded the jurisdictional limits of the special court-martial. Indeed, my reading of the record leads me to suspect that appellant was less interested in having competent counsel than he was in obfuscating the proceedings. Thus, even assuming error occurred, it was undoubtedly harmless. *United States v. Johnson, supra* at 217 (Cox, J., concurring in the result).

For the reasons indicated, I concur in the disposition.