UNITED STATES

v.

**Staff Sergeant Robert M. PLOTT, Jr., FR238–06–2652, United States Air Force.**

**ACM 29343.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 April 1991.

Decided 16 July 1992.

Appellate Counsel for the Appellant: Captain Ursula P. Moul (argued), Colonel Jeffrey R. Owens, and Major Alice M. Kottmyer.

Appellate Counsel for the United States: Captain David C. Wesley (argued), Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., Captain James C. Sinwell, and Captain Timothy G. Buxton.

Before O'HAIR, RIVES, and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

RIVES, Judge:

Is an adult male a pedophile if he has sex with a female under the age of 16? In this case, the defense established that appellant was not. Over objection, the military judge

nonetheless permitted the members to receive substantial prosecution testimony about the poor rehabilitative potential of pedophiles. Finding prejudicial error, we set aside the sentence.

## I

### Factual Background

Tried by general court-martial composed of officer members, appellant was convicted, despite his pleas, of rape and adultery on divers occasions over a 20–month period and of two specifications (each on divers occasions) of indecent acts on a female under the age of 16. His sentence to a dishonorable discharge, confinement for 25 years, and reduction to E–1 was approved by the convening authority.

The offenses involve Angela, a niece of appellant's wife, who suffered many unpleasant incidents in her young life. While living in Mississippi, Angela was molested by both her grandfather and her mother's boyfriend. Thereafter, under the protection of a court order, she moved to live with appellant and his wife at Cannon Air Force Base (AFB), New Mexico. She was 9 years old at the time. After a year, she returned to live with her mother. A couple of years later, they moved to the civilian community near Cannon AFB, where appellant was still assigned.

Angela frequently visited her aunt and uncle's home. The couple lived in a trailer, which was the site of appellant's sexual misconduct with Angela. She was about 13 years, 8 months old when he began to fondle her. She says she feared him because he was a large man and had a violent temper. She had seen him slap his wife hard and throw various objects at her. She testified that after a few months, appellant indicated a desire for sexual intercourse. Angela said when she resisted his advances, he screamed at her and punched holes in the wall paneling, first with his head and then with his fists. Finally, he committed a forcible act of sexual intercourse. Angela's mother often sent her to stay at the trailer, and for a time she lived there. Sexual contact between Angela and appellant occurred frequently. Ultimately, she reported the abuse to the police.

When confronted, appellant first denied any sexual misconduct, but he later confessed. He maintained Angela was a willing participant in all of their sexual activities. At trial, the defense offered evidence that Angela had a bad temper, was violent, had made other allegations of rape, and was involved in consensual sex with several others.

### Discussion of Pedophilia

In the findings stage of the trial, the defense had a psychiatrist, Dr. Hoyer, testify that appellant suffered from Klinefelter's Syndrome, a chromosomal disorder that includes "a diminished sexual drive because of the low levels of male hormones." Hoyer had treated appellant for acute depression; at one point, he ordered appellant hospitalized because he had expressed some "suicidal ideas."

Appellant's "passive" and "docile" personality were discussed. Hoyer expressed the opinion that someone with appellant's "psychological makeup" would be more susceptible to being seduced by a young woman than others would be. While explaining that, Hoyer briefly mentioned pedophilia—but he clearly prefaced his remarks by saying the topic "doesn't apply to" appellant. Before concluding direct examination, the defense counsel had Hoyer confirm there was "no indication of pedophilia" in appellant's case. The record shows appellant was an in-patient for mental health evaluations on at least two occasions; even during follow-up outpatient psychotherapy prior to trial, he was never diagnosed as a pedophile.

The trial counsel pursued the subject of pedophilia. In cross-examination, Hoyer stated there was no evidence of a link between Klinefelter's Syndrome and pedophilia. In response to a number of follow-up questions in this area, he ultimately speculated that sufferers of Klinefelter's Syndrome could be "vulnerable" and "more at risk than the average person" to seduction by a young girl. The following exchange occurred:

Q: Doctor, would a person who had sex with a 13 year old be considered a pedophilia [sic]?

A: Yes. It's pedophilia. Let's put it this way, if it's pedophilic activity, I would hesitate to say I'd be willing to make that diagnosis just on a one-time occurrence.

Q: Well, is it your understanding that this is a one-time instance of sexual contact between [appellant] and his 13 year old niece?

A: No, but only since the trial has started have I become aware of the fact that it apparently happened more than once. *I was merely correcting my initial agreement to your question.*

(emphasis added). In context, Hoyer's "initial agreement" to the question of whether sex with a 13–year–old is a pedophilic act was in the nature of an academic response; Hoyer "corrected" his statement in an effort to clarify that *appellant* was *not* a pedophile.

During redirect, Hoyer noted that Dr. Grant, an expert witness for the prosecution, had provided him 13 unsolicited articles about Klinefelter's Syndrome. Hoyer believed Grant gave him the articles for the transparent purpose of having him discredited during cross-examination. Hoyer was not offended by the tactic, and he said that neither the articles nor any matter discussed in cross-examination had changed his opinion about appellant.

Grant was called as the prosecution's lone sentencing witness. His credentials were discussed, and he was accepted without objection as an expert in the fields of forensic psychiatry and child sexual abuse. The trial counsel raised the first matter of substance when he asked: "Dr. Grant, let's talk about pedophilia in general. How difficult is it to treat a pedophile?" Grant answered, "Well, if you believe the numbers, they can't be treated at all."

Before another question could be asked, the defense counsel interjected: "I object to this line of questioning. I don't see any relevance to the issue of pedophilia. There's been evidence already in the trial,

there was no indication of [appellant] being diagnosed as a pedophile." The trial counsel countered that Dr. Hoyer had "clearly stated" that appellant's "behavior was indeed pedophilia." The defense counsel rejoined, "And he came back and clarified what he meant by that. He did not diagnose him as pedophilic." The military judge ruled: "I'll let him go into it. Go ahead." Trial counsel thereafter developed Grant's testimony on the relative ineffectiveness of attempting to treat pedophiles. He parlayed that information in his sentencing argument, asking for lengthy confinement at least in part because of the expert's testimony about appellant's poor "long term prognosis."

## II

■ Appellant attacks the propriety of the judge's ruling that permitted Dr. Grant to discuss the treatment of pedophiles. He submits the extensive expert testimony about pedophilia caused him to suffer the stigma of a diagnosis he never received. We agree.

"Relevant evidence" is very broadly defined in the military. *See, e.g., United States v. Reece,* 25 M.J. 93, 95 (C.M.A. 1987). It includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401.

Evaluation of evidence the government proffers in sentencing begins with the question of whether the evidence tends to prove or disprove facts permitted by the rules. *United States v. Martin,* 20 M.J. 227, 230 n. 5 (C.M.A.1985); *United States v. Anderson,* 25 M.J. 779, 780 (A.C.M.R. 1988). In sentencing, R.C.M. 1001(b)(4) allows the trial counsel to introduce evidence of "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." *See United States v. Gordon,* 31 M.J. 30 (C.M.A.1990). Evidence of rehabilitation potential is permitted under R.C.M. 1001(b)(5). *See, e.g., United States v.*

*Claxton,* 32 M.J. 159 (C.M.A.1991); *United States v. Aurich,* 31 M.J. 95 (C.M.A.1990).

The military judge's decision to permit testimony about pedophilia after appellant was convicted of sex offenses involving an underaged female seems intuitively correct. Indeed, with the proper foundation, expert testimony on appellant's amenability to treatment could have been appropriate. In the recent case of *United States v. Stinson,* 34 M.J. 233, 238–39 (C.M.A.1992), an expert in the area of child sexual abuse was permitted to testify about the accused's "prognosis for rehabilitation." The expert's testimony was considered relevant even though she neither interviewed the accused nor knew much about his background. The lack of personal contact between the expert and the accused affected only the weight to be given the testimony, not its admissibility. *Id.* at 239.

Here, however, any discussion about the rehabilitation of pedophiles was irrelevant and therefore inadmissible. Mil.R.Evid. 402. The defense offered evidence that appellant was *not* a pedophile, and the prosecution provided nothing to establish the contrary. The trial counsel offered no evidence to show a person who fit appellant's personality traits and who committed the offenses charged here would be pedophilic. He never even had a witness define "pedophile."

Faced with a defense psychiatrist who stated uncategorically that appellant was not a pedophile, the trial counsel attempted to twist the testimony to mean the opposite. At best, Dr. Hoyer offered his intellectual agreement with a statement that an adult who had sex with a 13–year–old could be a pedophile. However, Hoyer recognized the danger that his answer could be misinterpreted, and he immediately tried to clarify his response (i.e., by restating his view that appellant's sex with Angela was not pedophilic).

Words like "pedophile" have extremely negative connotations, and the danger of prejudice is magnified in a trial by members. The harm here was further exacerbated when the military judge permitted the trial counsel to elicit substantial testimony from Dr. Grant about the treatment of pedophiles. Grant began his discussion by saying pedophiles "can't be treated at all," and the judge allowed him to explain his views extensively. Due to its lack of relevance, and over the timely defense objection, Grant's testimony was plainly inappropriate. *See United States v. August,* 21 M.J. 363, 365 (C.M.A.1986). As appellant's counsel submitted in oral argument, if the testimony is allowed in this case, wouldn't a discussion of the treatment of pedophiles be permitted in every carnal knowledge prosecution?

■ A trial judge can permit experts to offer their conjecture on a person's prospects for treatment. The Supreme Court has sanctioned such testimony, even in a capital murder case. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Criminal trials are adversarial proceedings, and the opposing party can point to the often shaky underpinnings of such evidence. The Court in *Barefoot* expressed confidence that members of a jury can "separate the wheat from the chaff." 463 U.S. at 899 n. 7, 103 S.Ct. at 3398 n. 7; *see also Stinson,* 34 M.J. at 239.

■ The problem here is that Dr. Grant's testimony focused on the treatment of *pedophiles*—an irrelevant, inflammatory, and undefined word in this case—rather than on appellant's prognosis based on his misconduct. Without even performing the balancing test of Mil.R.Evid. 403 to guard against unfair prejudice, the military judge permitted the members to consider Grant's testimony in their sentencing deliberations. While "chaff with wheat" can be acceptable, the government here added another ingredient to its sentencing case, and the military judge thereafter provided no guidance to help the members in the sorting process. The effect of his ruling was to permit the members to assume appellant was a pedophile. Following careful consideration, we cannot find this error harmless under Article 59(a), UCMJ. *See United States v. Cole,* 31 M.J. 270 (C.M.A.1990).

## III

The error on sentencing evidence affects only that phase of the trial. Final resolution of that issue will be deferred while we examine the other errors asserted by appellant to determine the propriety of the findings of guilty.

### Disqualification of Trial Counsel

 The defense moved for the disqualification of the trial counsel and assistant trial counsel because they had access to the "full report" of appellant's mental examination board. We agree with the military judge's conclusion that appellant suffered no prejudice from the prosecution team's inadvertent access to the board's report.

Mental examination boards prepare two reports. R.C.M. 706(c)(3). One report, consisting only of the board's ultimate conclusions, may be provided to all parties. R.C.M. 706(c)(3)(A). The other report, a full narrative, has a strictly limited audience. R.C.M. 706(c)(3)(B). Under Mil. R.Evid. 302(a), an accused may prohibit the introduction into evidence of any statement made at the mental examination as well as any evidence derived from such a statement.

Prior to preferral of charges in this case, the assistant defense counsel requested an inquiry into the mental responsibility and capacity of appellant under R.C.M. 706. The special court-martial convening authority (SPCMCA) directed the inquiry. After the board met, the members provided their ultimate conclusions to the SPCMCA.

A second report prepared by the board was placed in appellant's mental health records. The government's expert witness, Dr. Grant, testified on this preplea motion. He said the document "reads like an ordinary narrative summary on a guy who was hospitalized for stress related symptoms." However, the witness also stated that the document was in fact "the full report of the sanity board." It was not, however, identified as the board report, nor did it contain instructions for limited access or restricted distribution.

While preparing for trial, the assistant trial counsel obtained a copy of appellant's mental health records. When he noticed the second board report, he was uncertain if that document was the board's full narrative report. Captioned as a "Narrative Summary (Clinical Resume)," the report begins by noting the patient was admitted under a "provisional diagnosis of major depression." Near the end of that document is the statement that a "sanity board was conducted and, following this, the patient was discharged." The last page of the report provides: "the results of the sanity board will" be forwarded to appellant's base of assignment. Ultimately, the assistant trial counsel decided the document was not the report that would be protected under R.C.M. 706(c)(3), (5), and he read it. The trial counsel also read the report.

The report did not reveal any statements by appellant relevant to the charged offenses. In fact, it states that on advice of his defense counsel, appellant was "very hesitant to talk about the details surrounding the alleged molestation" and that he "has not made any indication about the truth or falsehood of the possible molestation." Near its conclusion, the report notes that appellant "continued to avoid talking about ... the alleged molestation/rape which led to his admission, which might be seen as appropriate given the legal charges pending against him."

The military judge did not err in denying the defense motion to disqualify the members of the prosecution team under Mil. R.Evid. 302 and R.C.M. 706(c) because of their exposure to the board's second report. *See United States v. Littlehales*, 19 M.J. 512, 516 (A.F.C.M.R.1984). While that document was not so marked, it apparently was written as the full narrative report described by R.C.M. 706(c)(3)(B). In his letter ordering the mental examination board, the SPCMCA had provided proper instructions on the contents and release of the board's report. His guidance, however, was not followed.

The report should have been handled with great care. It should have been labeled as a sensitive report with strictly limited access. It should not have been

placed in appellant's non-privileged outpatient mental health records. However, the report contained no adverse admissions by appellant. Further, there is no indication in the record, nor any averment by appellant, that any evidence or derivative evidence from the mental examination was used in any manner by the prosecution. We are satisfied that trial counsel did not read the second report with knowledge of its protected status as the R.C.M. 706(c)(3) "full report." We conclude appellant suffered no prejudice by the inappropriate disclosure of the second board report.

### Request for New Sanity Board

■ After ruling on the motion to disqualify the trial counsel, the military judge denied a defense request for a continuance so that a new sanity (mental examination) board could be conducted. The judge had previously heard testimony on the nature and adequacy of the prior *report*—which was clearly deficient. However, the inadequate report cannot be equated to an inadequate *board*. A letter titled "Sanity Board Evaluation," signed by the three members of the sanity board, was forwarded to the SPCMCA. It succinctly answered the questions concerning appellant's sanity. Appellant did not meet his burden of coming forward with some evidence to justify a new sanity board.

Appellant did not fully cooperate at the first board (on advice of counsel) even though that board had been requested by the defense. The defense presented no information to justify a second board. *See United States v. Hilow,* 32 M.J. 439, 445 (C.M.A.1991) (Cox, J., dissenting); *United States v. Settle,* 33 M.J. 688 (A.F.C.M.R. 1991). We find the military judge inquired sufficiently into appellant's mental responsibility and capacity. He did not abuse his discretion in denying the defense request for a continuance to convene a new sanity board.

### Cross-Examination of Defense Expert Witness

■ Appellant contends the military judge erred by permitting the defense expert witness, Dr. Hoyer, to be cross-examined about matters that were hearsay and uncharged misconduct. We disagree. The trial counsel used the records Hoyer relied on to attack the basis of his testimony, which is proper under Mil.R.Evid. 705.

■ The cross-examination was also an appropriate challenge to Hoyer's testimony that appellant had a docile and passive character. It was permissible for the trial counsel to question Hoyer about specific violent outbursts that were documented in the records on which the expert relied. Mil.R.Evid. 405(a) specifically permits cross-examination "into relevant specific instances of conduct." *United States v. Sharp,* 29 M.J. 856 (A.F.C.M.R.1989).

■ Finally, we note that an instruction on the limited use of the hearsay and uncharged misconduct would have been appropriate. *See United States v. Cole,* 29 M.J. 873, 876 (A.F.C.M.R.1989), *aff'd,* 31 M.J. 270 (C.M.A.1990). However, the failure to provide such an instruction was not plain error. The absence of a defense objection to the omission and the failure of the defense to request an instruction waives the issue, for both findings and sentencing purposes. R.C.M. 920(f), 1005(f).

### Evidence of Victim's Prior Sexual Conduct

Appellant submits the military judge erred by excluding the testimony of Angela's past sexual conduct. At trial, the defense wanted to provide evidence that she had been sexually active with her 10–year-old cousin. Specifically, the defense sought admission of the boy's testimony that she had fondled his penis and placed it in her vagina on four or five occasions over a period of some 30 months. The defense contended this testimony was relevant to show she was sexually aggressive and a willing participant in her sexual activities with appellant.

■ When an accused is charged with a nonconsensual sexual offense, evidence of the victim's past sexual behavior is generally not admissible. Mil.R.Evid.

412(b). Exceptions to that rule are provided for such situations as prior consensual sexual relations between the accused and the victim, or information that indicates the accused is not the source of semen or injury. *Id.* Those exceptions are not available to appellant. The military judge did not abuse his discretion in excluding the boy's testimony on this matter. *See United States v. Fox,* 24 M.J. 110 (C.M.A.1987); *United States v. Vega,* 27 M.J. 744, 747 (A.C.M.R.1988).

## IV

We have considered the other matters raised by appellant, including his submissions under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). We conclude the findings of guilty are correct in law and fact and they are affirmed.

The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge O'HAIR and Judge MILLS concur.