**UNITED STATES, Appellee,**

v.

**Sergeant First Class Julius STARKS, 587–23–0628, United States Army, Appellant.**

**ACMR 9102190.**

U.S. Army Court of Military Review.

31 March 1993.

For Appellant: Captain Robert L. Carey, JAGC (argued); Colonel Malcolm H. Squires, Jr., JAGC (on brief).

For Appellee: Captain John P. Saunders, JAGC (argued); Colonel Dayton M. Cram-

er, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Donna L. Barlett, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

DELL'ORTO, Judge:

Pursuant to mixed pleas, the appellant was found guilty, at a general court-martial composed of officer and enlisted members, of larceny (two specifications), forgery (two specifications), and making and uttering checks without sufficient funds, in violation of Articles 123, 123a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 923, 923a, and 934 (1982) [hereinafter UCMJ]. The appellant was sentenced to a dishonorable discharge, confinement for two years, and reduction to Private E1. The convening authority approved the adjudged sentence.

The appellant asserts, both through appellate defense counsel and personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that he was denied effective assistance of counsel when his trial defense counsel submitted a one-page request for clemency pursuant to Rule for Courts–Martial 1105 [1] that failed to include numerous documents that the appellant had personally obtained and desired to incorporate into the request for clemency submitted to the convening authority. Because of the confusion that existed in the minds of the parties concerning the focus of responsibility for assisting the appellant in preparing and submitting his R.C.M. 1105 matters, we do not reach a conclusion concerning the effectiveness of counsel's post-trial representation, but nevertheless grant the appellant the remedy he seeks.

The facts on this issue are lengthy and anything but clear.[2] Briefly, the undisput-

---

1. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1105 [hereinafter MCM, 1984 and R.C.M., respectively].

2. We are troubled by the numerous controverted questions of fact posed by the affidavits this Court has admitted from the appellant, his trial

defense counsel, Captain (CPT) C, and her Trial Defense Service (TDS) replacement, CPT R. In essence, they tell three different tales. No two are sufficiently corroborative to completely discredit the third. What those affidavits collectively depict, at a minimum, is confusion in

ed facts begin with the conclusion of the appellant's court-martial on 25 September 1991. After the trial, Captain (CPT) C (at the time CPT G), who had been the appellant's sole defense counsel throughout the lengthy pretrial and trial stages of the court-martial, introduced the appellant to CPT R. Captain C was scheduled to depart Korea on a permanent change of station within a week and CPT R was her replacement at the Camp Howze TDS office. On 2 October 1991, CPT C departed Korea for Fort Drum, New York, where she reported twelve days later. The appellant remained in Korea, where he was initially confined. On 20 November 1991, CPT C certified that she had examined the record of trial which had been sent to her at Fort Drum. On 19 December 1991, the appellant acknowledged, in writing, his receipt of a copy of the Staff Judge Advocate's (SJA) Recommendation, dated 18 December 1991, and his right to respond to that recommendation within ten days. On the same certificate on which he initialed the above-identified acknowledgements, he indicated his intent to respond to the SJA's recommendation pursuant to R.C.M. 1106. Although that certificate also contained a provision to notify the appellant of the deadline for submitting matters pursuant to R.C.M. 1105, no date was entered on the certificate the appellant signed.

An undated similar certificate was served on CPT C. She signed the certificate on 13 January 1992, indicated that she would make no response to the SJA's recommendation pursuant to R.C.M. 1106, and acknowledged that the deadline for submitting matters pursuant to R.C.M. 1105 was 22 January 1992. Contained in the allied papers of the record of trial is an 8 January 1992 memorandum for record, executed by Sergeant (SGT) K, "Post–Trial NCO," in which he summarized a telephone conversation he had with CPT C on that date concerning R.C.M. 1105 and 1106 matters per-

taining to the appellant's case and one other. Sergeant K indicated that CPT C acknowledged receiving the SJA's recommendations in both cases before New Year's Day, that she planned to submit a request for clemency in the appellant's case based upon his good service record, and that she would submit such a request via facsimile machine "by the end of this week." On 12 January 1992, CPT C transmitted by facsimile a one-page, five-paragraph, request for clemency in the appellant's behalf. On 18 January 1992, the SJA prepared an addendum to his recommendation in which he addressed the request for clemency and adhered to his original recommendation. The convening authority took action on 21 January 1992 without having been presented with any of the documents the appellant claims he desired the convening authority to review in determining whether to grant clemency in his case.

There are numerous facts in dispute. The appellant has submitted to this Court a package of more than twenty documents that he complains CPT C failed to submit on his behalf to the convening authority. In his 23 September 1992 affidavit, he confirms that CPT C introduced him to CPT R the evening his court-martial concluded and told him that CPT R would be his "point of contact" in Korea on his case. He complains that CPT C failed to respond to the letters and documents he sent her requesting that the documents be included in his clemency packet. He claims that he did not receive a copy of the matters CPT C did submit on his behalf.

Captain C's countering affidavit of 29 January 1993 states that at the 25 September 1991 meeting with the appellant and CPT R, the appellant agreed to have CPT R "represent and assist him in all post-trial matters from that day forward." She denies receiving any communication from the appellant or CPT R indicating that either

each party's mind as to the other's role. It is that confusion that leads directly to the remedy we grant. To go further to affix fault or to determine whether CPT C was ineffective in her representation of appellant, would require a post-trial evidentiary hearing under *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R.

411 (1967). Because we have determined to grant the appellant's requested relief, and in the interests of judicial economy, we decline to order such a hearing in this case. Nevertheless, we are not firmly convinced of the accuracy of CPT C's affidavit.

expected her assistance in preparing the appellant's post-trial submissions. The clemency request she did submit resulted from a telephone call she received in mid-January 1992 from the post-trial clerk (presumably SGT K) alerting her that no post-trial submission had yet been received from anyone on the appellant's behalf. She made this submission despite her belief that CPT R was the appellant's "attorney for post-trial submissions."

We have admitted and considered CPT R's 15 March 1993 affidavit. He denies that there was ever a formal "transfer" of the attorney-client relationship from CPT C to himself and describes his role as that of a "logistical conduit" between the appellant, CPT C, and the SJA office in the submission of the appellant's R.C.M. 1105 and 1106 matters. He denies that he ever saw a copy of the "record of trial, the post-trial recommendation or any other matters concerning this case." He states that his office's policy was consistent with TDS policy that cases would not be transferred when counsel departed Korea.

This Court has recently considered the issue of the effectiveness of post-trial representation in two scenarios somewhat analogous to that presented in this case, in which there existed confusion as to who would represent a soldier in the post-trial phase of his case. In one instance, this Court held that the soldier was not provided effective assistance of counsel and set aside the convening authority's action and returned the record for a new review and action. *United States v. Garner*, 34 M.J. 575 (A.C.M.R.1992). In the other, this Court held that although counsel had satisfied the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "cumulative doubt" existed as to whether the appellant had been afforded a full opportunity to present matters to the convening authority prior to his action on the case. *United States v. Hawkins*, 34 M.J. 991 (A.C.M.R.1992). Again, the convening authority's action

was set aside and the record of trial returned for a new review and action.[3]

The differing approaches this Court has taken in *Garner* and *Hawkins* cause us to question the framework under which the issue of post-trial representation is examined. We focus our concern on those instances in which the government moves a trial defense counsel to a location at great distance from his or her client after the court-martial but prior to the convening authority's action. In those instances, can a convicted soldier be adequately served by a counsel who may be completely familiar with his case but who, because of wartime assignment, temporary duty, or permanent change of station, is now separated by thousands of miles and numerous time zones from his or her client, and who must comply with strict statutorily mandated time constraints? Or would that soldier be better served by a local counsel who, though unfamiliar with the facts of the underlying case, nevertheless has better access to the soldier, the soldier's records and chain of command, and the convening authority? If we follow the precedent established by *Garner*, are we imposing an unrealistic standard upon the defense counsel, even taking into account the rigid test for finding ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064 (counsel for capital defendant not ineffective during sentencing proceeding for electing to forego presentence report, failing to request a psychiatric report, and failing to investigate or present character witnesses, and instead rely almost solely on extenuation and mitigation present in the defendant's plea colloquy with the trial judge)? If so, are we encouraging the attacked counsel to be less than candid with this Court in his or her response affidavit in order to avoid the very unpleasant professional ramifications of a holding that concludes that a counsel was ineffective? Conversely, if we follow *Hawkins*, will we effectively carve out an exception to the evaluation of post-trial ineffective assistance claims under *Strick-*

---

**3.** Both *Garner* and *Hawkins* addressed situations involving defense counsel deployed to Southwest Asia to participate in Operation Desert Shield/Storm during the post-trial phase of their clients' courts-martial.

*land,* and find general prejudice whenever there is a breakdown of the post-trial representation process? If so, do we unfairly leave the staff judge advocate and convening authority "holding the bag" by returning the case for a new recommendation and action? *See United States v. Frueh,* 35 M.J. 550, 552 (A.C.M.R.1992). Finally, what, if any, is the TDS supervisory role in ensuring that the ball is not dropped during the post-trial process?

■ Without answering the above questions, we make the following observations. Once a trial defense counsel is detailed to represent an accused soldier and an attorney-client relationship is established, absent an express release by the accused or good cause shown on the record, that trial defense counsel remains as counsel for the accused from preferral of charges, through action by the convening authority, and until appointment of appellate defense counsel. R.C.M. 502(d)(6), 505(d)(2)(B) and 506(c); *United States v. Hanson,* 24 M.J. 377, 379 (C.M.A.1987); *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977); *United States v. Polk,* 27 M.J. 812 (A.C.M.R.1988), *review granted in part,* 31 M.J. 426, *reversed,* 32 M.J. 150 (C.M.A.1991); *United States v. Antonio,* 20 M.J. 828 (A.C.M.R.1985).

■ A detailed trial defense counsel's self-serving affidavit of release, especially in the face of conflicting evidence, will not be an adequate substitute for a clear and unequivocal release by an accused. A defense counsel may not unilaterally withdraw from the representation of an accused. *United States v. Acton,* 33 M.J. 536 (A.F.C.M.R.1991). Absent truly extraordinary circumstances, only the accused may effect release of an attorney with whom he has established an attorney-client relationship. *United States v. Iverson,* 5 M.J. 440, 442–43 (C.M.A.1978). If CPT C believed that there were going to be problems in the effective representation of the appellant post-trial, and believed that it would be in the appellant's best interests to

engage another attorney to perform that representation, and had secured her client's consent, then the best place to record that decision and transfer of the appellant to another attorney would have been on the record at the court-martial's conclusion, with the appellant, both attorneys, and the military judge in full accord as to that arrangement. *United States v. Sparks,* 26 M.J. 676, 677 n. 1 (A.F.C.M.R.1988), *aff'd,* 29 M.J. 52 (C.M.A.1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 730, 107 L.Ed.2d 748 (1990). Had this been accomplished at the conclusion of the appellant's court-martial, we would not be presented with the confusion that now exists.

■ Under the clouded facts of this case, we are unable to determine whether the appellant was provided post-trial effective or ineffective assistance of counsel. We are certain, however, that there were substantial clemency matters that he desired the convening authority to review prior to taking action on his case, and the convening authority was not provided with those matters. The appellant is entitled to relief. *See United States v. Hallums,* 26 M.J. 838, 841 (A.C.M.R.1988).[4] There is precedent for our granting the appellant his remedy without finding that his counsel provided ineffective assistance. *United States v. Spurlin,* 33 M.J. 443 (C.M.A.1991).

The action of the convening authority, dated 21 January 1992, is set aside. The record of trial will be returned to The Judge Advocate General for a new recommendation and action by the same or a different convening authority in accordance with Article 60(c)–(e), UCMJ, 10 U.S.C. § 860(c-e).

Senior Judge CREAN and Judge GONZALES concur.

---

**4.** We have not addressed the remaining assigned error and *Grostefon* issues raised by the appellant. The appropriate time to accomplish this is upon our review after a new recommendation and action have been completed. *Hawkins,* 34 M.J. at 995 n. 8 (citing *Garner,* 34 M.J. at 578 n. 3, and *United States v. Harris,* 30 M.J. 580, 582 n. 1 (A.C.M.R.1990)).