UNITED STATES

v.

**Staff Sergeant Robert M. PLOTT, Jr., FR238–06–2652, United States Air Force.**

**ACM 29343 (reh).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 Oct. 1992.

Decided 23 Nov. 1993.

Appellate Counsel for the Appellant: Mr. Michael J. Duncan (argued), Colonel Terry J. Woodhouse, Lieutenant Colonel Jay L. Cohen, and Captain Del Grissom.

Appellate Counsel for the United States: Captain Timothy G. Buxton (argued) and Colonel Jeffery T. Infelise.

Before JOHNSON, HEIMBURG, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT UPON REHEARING

HEIMBURG, Senior Judge:

This case is before us a second time after a rehearing on sentence. *See United States v. Plott*, 35 M.J. 512 (A.F.C.M.R. 1992). Staff Sergeant Plott asserts six errors in the rehearing of his case. Finding none persuasive, we affirm.

### I. SEVERANCE OF ATTORNEY–CLIENT RELATIONSHIP

During the rehearing, Sergeant Plott moved to "stay all proceedings until such time as the government makes available to him his requested Individual Military Defense Counsel," Major B. After admitting a stipulation of essential facts and hearing the testimony of Sergeant Plott, the military judge denied the motion. In two related assignments of error, Sergeant Plott asserts the military judge erred in denying the requested stay on the grounds that Sergeant Plott had earlier released Major B as his counsel.

The essential facts are not in dispute. Major B defended Sergeant Plott at his first trial, but was reassigned to new duties before the rehearing. After this Court ordered a rehearing, Sergeant Plott retained civilian counsel and, without consulting his civilian lawyer, he went to Captain H, the base area defense counsel, and said he wanted to release Major B. He told Captain H his wife didn't like Major B and he and his wife "both felt that he [Major B] really didn't represent me well." Although he told Captain H his wife would "skin [him] alive" if he did not release Major B, he testified that was just a "figure of speech," and he and his wife agreed on the decision. Captain H gave Sergeant Plott no advice about the decision because of a conflict of interest (he had assisted the prosecution team at trial), but his administrator prepared a release, which Sergeant Plott signed. There is no evidence either Captain H or his administrator knew on 17 August 1992 that Sergeant Plott had retained civilian counsel. More than 3 weeks later, Sergeant Plott submitted a written

request for Major B as his "designated defense counsel" for the rehearing. Major B's new supervisor denied the request, citing Major B's "current responsibilities and workload, geographic considerations including cost to the government and the fact that SSgt Plott has civilian counsel and another military counsel available to him for this rehearing." On the day of the denial, another military defense lawyer was detailed to represent Sergeant Plott and assisted his civilian counsel at the rehearing.

■ Every military member facing trial by general or special court-martial has the right to be represented by civilian counsel provided at no expense to the government and by military counsel, either detailed under Article 27, 10 U.S.C. § 827 or, if reasonably available, selected by the member. Article 38(b), UCMJ, 10 U.S.C. § 838(b); R.C.M. 506(a). When a military member requests assignment of a requested counsel, the existence of an attorney-client relationship is a critical factor which impacts on the decision concerning availability. *See* Air Force Regulation 111–1, *Military Justice Guide,* paragraphs 8–4d(1), e(1) and f (9 March 1990). That is so because the government may not sever an existing attorney-client relationship without good cause. *United States v. Saenz,* 18 M.J. 327 (C.M.A.1984); *Cf. United States v. Murray,* 20 U.S.C.M.A. 61, 42 C.M.R. 253, 254 (1970) (The government cannot properly sever an attorney-client relationship for administrative convenience). The attorney-client relationship continues after adjournment of the trial. *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977). A military member is entitled to the services of his military counsel at a rehearing, absent special circumstances, unless the member personally severs the relationship. *United States v. Beatty,* 25 M.J. 311, 315 (C.M.A.1987).

■ The issue presented is whether Sergeant Plott severed the attorney-client relationship by signing a release of Major B before his request for Major B as individual military counsel. Sergeant Plott concedes that the decision to deny Major B

would be unassailable but for the previous attorney-client relationship. He argues that his release of Major B should not be given effect because he signed it without a "real understanding of the consequences of his signature, and without having been advised of either his right to continued representation by Major [B], or of the significance of that document." In effect, Sergeant Plott is arguing for a new rule: that a release of counsel is not "knowing" unless the military member first has been advised by counsel.

■ Although we are unable to find any precedent on the precise issue raised by Sergeant Plott, case law gives us adequate guideposts for our decision. We find three principles applicable to release of counsel. First, any release must be express, not implied. *United States v. Acton,* 33 M.J. 536, 538 (A.F.C.M.R.1991) (At least affirmative consent to release must be shown in the record; we cannot apply waiver.) Second, an appellate court should not accept a unilateral affidavit from counsel that release occurred, but should require the record show "clear and unequivocal" evidence of release by the appellant. *United States v. Starks,* 36 M.J. 1160, 1164 (A.C.M.R.1993). Finally, any purported release of defense counsel must be "intentional and with full knowledge of [the] consequences." *Cf. Palenius,* 2 M.J. at 91, *quoting United States v. Howell,* 11 U.S.C.M.A. 712, 717, 29 C.M.R. 528, 533 (1960). We find no support in military or civilian precedents for the proposition advanced by Sergeant Plott that advice of counsel is a prerequisite to the decision to release counsel, and we decline to create such a rule.

The military judge found Sergeant Plott's release of Major B was made "freely, intelligently, and knowingly." We adopt that conclusion. Moreover, applying the principles enunciated above, we find the record shows that Sergeant Plott's release of Major B was expressly and personally made by him with full knowledge of the consequences.

There could hardly be a more express release of defense counsel than the letter Sergeant Plott signed. It stated unequivocally, "As of this date, 17 August 1992, I hereby release Major [B] from any and all responsibilities as my designated defense counsel." As Sergeant Plott admitted on cross-examination, he understood this would relieve Major B of "any responsibility towards [his] case." We find no ambiguity in Sergeant Plott's actions.

That the release was personally made is also clear from the record. Despite having told Captain H his wife did not like Major B and wanted him released as counsel, he admitted on cross-examination the decision was his, and was made jointly with his wife because they make such important decisions together. There is no hint or allegation of coercion in Sergeant Plott's decision to release Major B.

The evidence clearly establishes the release was knowing. Sergeant Plott went into the area defense counsel's office for the purpose of releasing Major B from further service as his defense counsel. At the time he signed the release, Sergeant Plott believed there would be a sentence rehearing in his case and, unless he did something to end the relationship, Major B would continue to represent him. He also testified he knew that his release meant Major B would have no further involvement or responsibility for his defense, and another counsel would be appointed in his place. Sergeant Plott was under no misunderstanding of the meaning or effect of the release he signed.

We conclude the military judge's findings are more than amply supported by evidence in the record and are adequate for us to resolve the issue on appeal. Sergeant Plott, on 17 August 1992, released Major B as his defense counsel. Denial of his later request for Major B as individual military counsel to assist his civilian counsel did not sever an attorney-client relationship, for there was no existing attorney-client relationship to sever.

## II. REFERRAL OF CHARGES

### A. Use of the "Authority Line"

■ Appellant asserts the rehearing was improper because the staff judge advocate signed the referral portion of the charge sheet "FOR THE COMMANDER." He argues that R.C.M. 601(e) requires a personal, nondelegable, decision by the convening authority to refer charges to trial. From that he urges us to require in every case that the "record" reflect the convening authority personally made the referral decision, to preclude the possibility that the staff judge advocate signed the charge sheet "on his own." We decline Sergeant Plott's request to make such a new rule.

While referral is a personal, nondelegable, responsibility of the convening authority, the act of signing the charge sheet to reflect that decision has never been considered nondelegable. The R.C.M. 601(e), Discussion, and AFR 111-1, paragraph 6-3c(1) both reflect the longstanding practice in which the staff judge advocate or another may sign the charge sheet for or by direction of the convening authority. AFR 111-1, paragraph 6-3c(1) requires a written delegation and the use of the authority line, "FOR THE COMMANDER," when another person signs the charge sheet on behalf of the commander.

Sergeant Plott does not assert that the staff judge advocate usurped his authority or that the convening authority did not personally direct the sentence rehearing in his case. Trial defense counsel conceded they reviewed a copy of the written delegation from the convening authority which authorized the staff judge advocate to sign the referral of Sergeant Plott's charge sheet. Absent some evidence of impropriety in the referral of these charges, we accept the apparent authority shown by the use of the authority line. We specifically decline to impose on commanders who convene courts-martial the administrative burden to personally sign the charge sheet or another document reflecting their decision.

### B. Service of the Pretrial Advice

■ Sergeant Plott argues the service of charges on him on 24 August 1992 was

defective, and that he was improperly brought to trial within 5 days of a proper service of charges, contrary to Article 35, UCMJ, 10 U.S.C. § 835. In making this argument he admits the service of the actual charge sheet was timely, but he objects because he was not given a copy of the staff judge advocate's pretrial advice until the day before the rehearing. This, he argues, violates R.C.M. 406(c), which requires that a copy of the pretrial advice be provided to the defense if charges are referred to trial by general court-martial. He urges us to combine the admonition of R.C.M. 406(c) and the requirement of Article 35, UCMJ, and rule that the pretrial advice must be served on an accused along with the charge sheet more than 5 days before trial. Absent waiver, he urges us to find a "statutory and jurisdictional defect" in the failure of the trial counsel to serve the pretrial advice more than 5 days prior to trial.

Article 35, UCMJ, and R.C.M. 602 which implements it, do not mention service of the pretrial advice in connection with the service of charges on an accused member. Even assuming we had authority to do so, we decline to create a new rule of "jurisdictional defect" to graft the requirements of R.C.M. 406(c) onto the statutory requirements of Article 35.

■ R.C.M. 406(c) says a copy of the pretrial advice "shall be provided" the defense if the charges are referred to trial. The drafters' analysis indicates this requirement was written into the rules to "ensure that the advice can be subjected to judicial review when necessary." MCM, Appendix 21, R.C.M. 406(c). Where a pretrial advice is required,[1] we believe the better practice is to serve a copy on the defense well in advance and not on the eve of trial. Nevertheless, no deadline is contained in R.C.M. 406(c), and we do not believe judicial creation of a deadline is helpful. We are confident the purpose of the rule and the interests of justice can be

served by testing any failure to comply with the requirements of R.C.M. 406(c) for prejudice. Sergeant Plott has pointed to no prejudice from delayed service of the pretrial advice concerning the rehearing, but urges us to find error even in the absence of prejudice. We find no basis for relief. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## C. Adequacy of the Military Judge's Essential Findings of Fact

■ Sergeant Plott argues we should return the record of trial to the military judge for entry of essential findings of fact and conclusions of law. At trial, the military judge announced he would attach to the record a "written memorandum detailing my essential findings and conclusions on both motions which seek to abate these proceedings." The two motions to which he referred addressed Sergeant Plott's request for Major B as individual military counsel and the asserted defects in the referral and service of the pretrial advice with the charges, discussed above. The military judge announced some findings on the record at the time he made the above statement. His promised memorandum, Appellate Exhibit VI, addressed only the issue of individual military counsel. Sergeant Plott admits he can point to no prejudice due to the failure of the military judge to make additional essential findings, but requests us to return the record nonetheless, less we be "left to speculate as to the basis and factual underpinnings for his ruling."

Essential findings are those findings of fact necessary to a resolution of a motion. R.C.M. 905(d). *See United States v. Postle,* 20 M.J. 632, 637 (N.M.C.M.R.1985). For the issues of referral of charges and service of the pretrial advice, there are no factual issues requiring essential findings. The only possible fact in dispute was the date the defense was served a copy of the pretrial advice. The military judge an-

---

1. We are dubious that a new pretrial advice was required for the rehearing on sentence in this case, for several reasons: a rehearing on sentence is a continuation of the trial (*Beatty,* 25 M.J. at 314); none of the Article 34(a), UCMJ,

10 U.S.C. § 834(a), matters are at issue in a rehearing on sentence; and a pretrial advice was done prior to the beginning of the trial and served on Sergeant Plott, satisfying all requirements.

nounced on the record he found the pretrial advice was received by defense counsel the day before trial, as trial counsel conceded. Because no other facts were in dispute, we find no error in the military judge's failure to make further essential findings.

## III. SENTENCING ARGUMENT

■ Sergeant Plott asserts the trial counsel improperly argued on sentence by quoting testimony of the victim which supported a specification of which he was found not guilty at trial. He argues the quoted testimony was "factually incorrect" and not proper evidence in aggravation of the offenses of which he was convicted.

A general court-martial convicted Sergeant Plott of rape and adultery on divers occasions over a 20–month period and of two specifications, each on divers occasions, of indecent acts on a female under the age of 16. All offenses involved Angela, a niece of Sergeant Plott's wife. He was acquitted of communicating indecent language to Angela. During sentence argument on rehearing, trial counsel said

> Parental figures like Staff Sergeant Plott are supposed to teach children their proper place in the world and *our* Staff Sergeant Plott certainly tried to do that, didn't he? When he was negotiating with Angie in October of 1990, telling her, "Let me stick it in and I'll give you $5." He was just trying to teach Angie about her proper place in the world, just trying to teach her what she was really worth.

The prior testimony of Angela was before the court as evidence, having been admitted without defense objection pursuant to R.C.M. 810(a)(2)(A). The testimony of Angela quoted by trial counsel concerned the last indecent act of which Sergeant Plott was convicted and also formed the basis of the indecent language specification. Angela said she awoke to find Sergeant Plott "messing with my breasts." He touched her on the breasts and between her legs with her pants on. She testified

she "got real tense" but tried not to let Sergeant Plott know she was awake. He apparently determined she was awake, because, she said, he told her "if I let him stick it in one more time that he would give me five dollars."

Sergeant Plott argues that his acquittal of communicating indecent language makes it prejudicial error for trial counsel to use that language in arguing the impact of the offenses of which he was convicted. In effect, Sergeant Plott asserts the court's finding of not guilty makes the language "factually incorrect" uncharged misconduct not relevant to the rehearing on sentence, since it doesn't concern the offenses of which he was convicted.

There was no objection to trial counsel's argument, waiving objection on appeal,[2] but Sergeant Plott argues the erroneous and inflammatory nature of the argument rises to the level of plain error, even though the rehearing was heard by a military judge sitting alone. We do not reach the issue of plain error, for we find no error. *Cf. United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("The first limitation on appellate authority under [the plain error rule] is that there indeed be an 'error.' ")

The fact that the court members found Sergeant Plott not guilty of communicating indecent language in the above-quoted exchange does not make Angela's testimony about the incident "factually incorrect" as he asserts. A finding of not guilty means only that the members were not convinced of Sergeant Plott's guilt of all elements of the *offense charged* beyond a reasonable doubt, not that the words were not said.[3] It is not useful and not relevant to this issue to engage in speculation about the members' findings. Angela's testimony was before the court, without objection, on rehearing. Her testimony about the circumstances surrounding the commission of one of the indecent acts, including the words of Sergeant Plott, is admissible under R.C.M. 1001(b)(4) in aggravation of the

---

**2.** R.C.M. 1001(g)

**3.** *See* MCM, Part IV, paragraph 89, for the elements of communicating indecent language.

offense. Trial counsel may properly refer in sentence argument to evidence of "aggravating circumstances directly relating to ... the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4), (g).

## IV. FAILURE TO WITHDRAW STAFF JUDGE ADVOCATE'S RECOMMENDATIONS

Counsel for Sergeant Plott avers he was not served a copy of the record of trial until he received the staff judge advocate's recommendations. *Cf.* R.C.M. 1106(f). He cites R.C.M. 1103(i)(1)(B), which provides "[e]xcept when unreasonable delay will result, the trial counsel shall permit the defense counsel to examine the record before authentication." Because he received the record of trial after it was authenticated, he requested the staff judge advocate to withdraw the recommendations to allow "comment and review," but was refused.

Although he cites no harm resulting from the fact that his counsel was unable to review the record before authentication, Sergeant Plott urges us to "find error." We decline to issue what amounts to a declaratory judgment. Our guiding principles must flow from the UCMJ, Article 59(a) of which says "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

## V. FIXED TERMS FOR TRIAL AND APPELLATE MILITARY JUDGES

In his final assertion of error, Sergeant Plott claims he was denied the due process and equal protection under the law afforded by the Fifth Amendment to the Constitution because he was denied trial and appellate military judges who enjoy the protection of fixed terms. The Court of Military Appeals has addressed this issue, and found a fixed term of office is not required as a matter of constitutional due process for military judges, trial or appellate. *United States v. Graf,* 35 M.J. 450 (C.M.A.1992). The issue is now pending before the Supreme Court. *United States*

*v. Weiss,* 36 M.J. 224 (C.M.A.1992), *cert. granted,* — U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). Absent a contrary decision by the highest court, the Court of Military Appeals decision in *Graf* guides our resolution of this issue.

## VI. CONCLUSION

The findings of guilty have been previously found correct in law and fact and affirmed. *Plott,* 35 M.J. at 519. After examining the record of trial, the assignment of errors, and the government's reply, we conclude that the sentence adjudged on rehearing is appropriate and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and the sentence are

AFFIRMED.

Senior Judge JOHNSON (who participated in this decision before his reassignment from the Court) and Judge YOUNG concur.